**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DARRELL ROGERS, *individually, and* *on behalf of all others similarly situated*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   No. 18-cv-2128 (KBJ) ) |
| LUMINA SOLAR, INC., | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION**

Plaintiff Darrell Rogers has sued defendant Lumina Solar, Inc. on behalf of himself and similarly situated individuals, alleging that Lumina Solar violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by using an automated dialing system to send to him certain text-message advertising without obtaining his prior express consent.  (*See* Compl., ECF No. 1, ¶¶ 6, 15, 18.)  After engaging in a period of discovery, the parties reached a settlement of this putative class action; before this Court at present is the parties' joint motion seeking final approval of that settlement under Federal Rule of Civil Procedure 23.  (*See* Joint Motion for Final Approval of Class Action Settlement ("Final Appr. Mot."), ECF No. 18.)  In their filing, the parties represent that the proposed settlement is "fair, reasonable, and adequate . . . and in the best interests of the Settlement Class in light of the factual, legal, practical, and procedural considerations presented in this case[.]"  (*Id.* at 2.)  Accordingly, the

parties request that this Court certify the settlement class, finally approve their settlement, and dismiss this legal action.  (*See id.* at 1.)[1]

For the reasons explained below, and upon consideration of the parties' submissions, the arguments and representations made at the final fairness hearing, and the relevant statutes, case law, and the entire record, this Court agrees with the parties that the requirements of Rule 23 are satisfied, and it will therefore **GRANT** the joint motion for final approval and dismiss this case.  A separate Order consistent with this Memorandum Opinion will follow.

## I.   BACKGROUND

### A.   Alleged Facts And Procedural History[2]

Rogers filed a complaint on September 13, 2018, asserting that Lumina Solar sent him a text message advertisement on September 4, 2018, by means of an automatic telephone dialing system.  According to Rogers's complaint, the text message stated: "DARRELL HOMEOWNERS Reply YES If You Want MORE INFO On HOME SOLAR In Your Area Plus Get The Details On The Tax Savings In Your State Stop to Quit." (Compl. ¶ 7.)  Rogers alleges that, because he had not provided his prior written consent to Lumina Solar to receive text message advertisements, the transmission of this message violated the TCPA.  (*See id.* ¶ 27.)  Lumina Solar answered Rogers's complaint on November 9, 2018, and the Court (Collyer, J.) held an initial scheduling conference on January 16, 2019, after which the parties engaged in a period of

---

[1]  Page number citations to the documents the parties have filed refer to the numbers that the Court's electronic case-filing automatically assigns.

[2]  The facts are not disputed and are drawn from the class action complaint, as well as the parties' joint filings seeking preliminary and final approval of the settlement, and the attachments thereto.

discovery.  (*See* Def.'s Answer and Affirm. Defenses, ECF No. 5; Min. Entry of Jan. 16, 2019.)[3]  On July 3, 2019, the parties notified the Court that they had reached a class settlement (*see* Notice of Settlement, ECF No. 14), and submitted a joint motion seeking preliminary approval of that settlement on August 23, 2019 (*see* Joint Motion for Prelim. Approval of Class Action Settlement ("Prelim. Appr. Mot."), ECF No. 16).

On September 11, 2019, the Court issued an order preliminarily certifying a settlement class consisting of all individuals to whom Lumina Solar sent text message advertisements between July 2, 2018, and September 20, 2018, which, based on information disclosed during discovery, pertained to 2,488 individuals.  (*See* Order Preliminarily Approving Settlement, Certifying Settlement Class, & Authorizing Notice to the Settlement Class ("Prelim. Appr. Order"), ECF No. 17, at 2.)  The Court's order also approved the notice that would be sent to the class members advising them of the settlement.  (*See id.* at 2–4; Settlement Agreement, Ex. 1 to Prelim. Appr. Mot., ECF No. 16-1, at 2.)

### B.    Notice To The Class And Terms Of The Settlement Agreement

Following the preliminary approval of the settlement, the Settlement Administrator—Class-Settlement.com—sent an email to the 2,488 identified class members containing the Class Notice and Claim Form that the Court had approved. (*See* Decl. of Dorothy Sue Merryman ("Merryman Decl."), Ex. 2 to Final Appr. Mot., ECF No. 18-2, ¶¶ 10–12.)  Of these email messages, 1,868 did not bounce back; therefore, the Settlement Administrator presumes that this many were received by the

---

[3] This matter was originally assigned to Judge Rosemary M. Collyer, who retired from the bench on March 13, 2020.  The Court's Calendar Committee transferred the case to the undersigned on January 10, 2020.

intended recipient.  (*See id.* ¶ 12.)  For the 619 emails that bounced back, the Settlement Administrator located a U.S. Mail address for each class member, using both the class list Lumina Solar provided and internet searches.  (*See id.* ¶ 14.)  The Settlement Administrator then mailed those individuals a copy of the Class Notice and Claim Form.  (*See id.* ¶¶ 15–16.)  The Settlement Administrator also set up a website, which contained the Class Notice, Claim Form, and Settlement Agreement, as well as details regarding deadlines for submitting claims and opting out of, or objecting to, the settlement; the date of the Final Approval Hearing; and contact information for Class Counsel.  (*See id.* ¶ 16.)  Class members were also invited to submit claims through the website, or by using U.S. Mail or facsimile.  (*See id.* ¶¶ 16–17.)

Under the Settlement Agreement, Lumina Solar is required to establish a $248,800 settlement fund.  (*See* Settlement Agreement ¶ 6.)  This fund amount will be used to make several types of payments:  settlement payments to the class members, attorney's fees in the amount of $39,808 (which represents 16% of the fund), a $5,000 incentive payment to Rogers, and the fees and costs of the Settlement Administrator.  (*See id.* ¶¶ 4, 6, 13.)  Class members who submit valid claims for payment are entitled to a pro rata share of the settlement fund that remains after the deduction of attorney's fees, the incentive payment to Rogers, and administration costs—up to $100—and any part of the settlement fund that is not paid out reverts to Lumina Solar.  (*See id.* ¶¶ 6, 9.)  The Settlement Agreement further provides that class members who do not opt out of the settlement have released all claims of any kind "that arise out of or relate to the sending of the 2,488 text messages."  (*Id.* ¶ 15.)

### C.    Joint Motion For Final Approval And Fairness Hearing

On January 16, 2020, the parties filed a joint motion seeking final approval of the settlement.  (*See* Final Appr. Mot.)  This Court held a fairness hearing on April 30, 2020, as Rule 23(e) of the Federal Rules of Civil Procedure requires.[4]  At that hearing, class counsel represented that the notices to the potential class members had been issued and delivered successfully (as described above); that no class members had opted out of the settlement; and that no objections to the settlement had been lodged.  (*See* Hr'g Tr., Apr. 30, 2020, at 10:4–12; 17:14–15.)  Counsel for Lumina Solar further represented that all members of the class were residents of the District of Columbia, and that Lumina Solar had provided notice to the U.S. Attorney General and the Attorney General of District of Columbia, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.  (*See id.* at 22:1–23:2.)  No objectors appeared at the fairness hearing.

## II.    LEGAL STANDARDS

In the Preliminary Approval Order issued on September 11, 2019, the Court preliminarily certified the settlement class and approved the form and content of the notice to be provided to class members.  (*See* Prelim. Appr. Order at 2–4.)  The Court also determined that, upon preliminary examination, the terms of the settlement were fair, reasonable, and adequate.  (*See id.* at 1.)  This opinion addresses both final certification of the class for settlement purposes and approval of the settlement itself.

---

[4]  This Court held the fairness hearing telephonically and provided audio access to the public and the media via a teleconference number in light of COVID-19 pandemic and Chief Judge Beryl Howell's standing orders limiting in-person hearings due to pandemic-related exigencies.  *See* Standing Order 20-19 (D.D.C. Apr. 20, 2020); Standing Order No. 20-9 (D.D.C. Mar. 17, 2020).

A.      **Class Certification**

Generally speaking, a class that is certified for settlement purposes must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 159 (D.D.C. 2014).[5]  There are two different aspects of the Rule 23 certification standard.  First, Rule 23(a) establishes the four familiar prerequisite characteristics of numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23(a) (requiring the court to evaluate whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class").  In addition, a proposed class must also satisfy at least one set of circumstances described in Rule 23(b).  *See* Fed. R. Civ. P. 23(b)(1–3) (allowing a class action to be maintained where separate lawsuits create the risk of inconsistent decisions, where class-wide declaratory or injunctive relief is appropriate, or where common questions predominate and class treatment is superior to individual actions).

In the instant case, the parties seek certification under Rule 23(b)(3), which applies when the plaintiff is seeking monetary damages, and requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ.

---

[5] The only exception is that "the court does not need to consider whether 'the case, if tried, would present intractable management problems,'" since the point of the settlement proposal is that there will be no trial.  *Alvarez,* 303 F.R.D. at 159 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)).

P. 23(b)(3).  These requirements are known as predominance and superiority.  *See Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314, 2016 WL 5107202, at *3 (D.D.C. Aug. 29, 2016).

Given that the putative class action at issue here is proceeding under Rule 23(b)(3), there are additional requirements for provision of notice to the class, which are found in Rule 23(c)(2).  *See* Fed. R. Civ. P. 23(c)(2).  Under that rule, the notice must be "the best . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Furthermore, "[t]he Due Process Clause also gives unnamed class members the right to notice of a class action settlement but does not require actual notice to all class members who may be bound by the litigation."  *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 68 (D.D.C. 2018) (citing *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008)).  Rather, "[n]otice need only be reasonably calculated to reach" the members of the class in order to satisfy constitutional due process requirements.  *Id.* (citing *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992)).

Rule 23(c)(2)(B) specifically requires that the class action settlement notice state "in plain, easily understood language" the following information:  (1) "the nature of the action;" (2) "the definition of the class certified;" (3) "the class claims, issues, or defenses;" (4) "that a class member may enter an appearance through an attorney if the member so desires;" (5) "that the court will exclude from the class any member who requests exclusion;" (6) "the time and manner for requesting exclusion;" (7) and "the

binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P.
23(c)(2)(B).

**B.      Final Approval Of Class Settlement**

Class claims must have court approval in order to settle.  *See* Fed. R. Civ. P.
23(e).  Furthermore, if the settlement will bind class members, the court can only grant
approval after holding a hearing, during which it may hear from class members who
object to the settlement.  *See* William B. Rubenstein, *4 Newberg on Class Actions*
§ 13:42 (5th ed. 2020).  And, ultimately, in order to approve a binding settlement, the
court must make a finding that the settlement is "fair, reasonable, and adequate[.]"  Fed.
R. Civ. P. 23(e)(2).

The D.C. Circuit has not established a particular test for settlement approval.
Instead, courts in this jurisdiction consider "a variety of factors, including:  (a) whether
the settlement is the result of arm's-length negotiations; (b) the terms of the settlement
in relation to the strengths of plaintiffs' case; (c) the status of the litigation proceedings
at the time of settlement; (d) the reaction of the class; and (e) the opinion of
experienced counsel."  *Alvarez*, 303 F.R.D. at 159 (quoting *In re LivingSocial Mktg. &
Sales Practice Litig.*, 298 F.R.D. 1, 11 (D.D.C. 2013)) (internal quotation marks
omitted).  It is well established that the court must endeavor to evaluate these factors
and cannot simply "rubber stamp" a proposed class action settlement.  *Ceccone*, 2016
WL 5107202, at *4 (internal quotation marks and citation omitted).  However, the Court
must also "stop short of the detailed and thorough investigation that it would undertake
if it were actually trying the case."  *Id.* (internal quotation marks and citation omitted).
Indeed, "there is a long-standing judicial attitude favoring class action settlements, and
[this] Court's discretion is constrained by the 'principle of preference' favoring and

8

encouraging settlement in appropriate cases." *Alvarez*, 303 F.R.D. at 160 (quoting *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 114 (D.D.C. 2007)) (internal quotation marks omitted).

## III.   ANALYSIS

This Court has analyzed, first, whether the class that the parties have proposed satisfies the requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority found in subsections (a) and (b) of Rule 23 of the Federal Rules of Civil Procedure, and, second, whether the notice that was used satisfies the dictates of Rule 23(c)(2) and the Due Process Clause.  The Court has also evaluated whether the proposed settlement is fair, reasonable, and adequate as Rule 23(e) requires.  For the reasons explained below, this Court finds that certification of the class is proper under Rules 23(a) and (b)(3), and that the notice provided to the class satisfies both the requirements of Rule 23(c)(2) and the Due Process Clause. Furthermore, the Court concludes that the proposed settlement comports with Rule 23(e) because its terms are fair, reasonable, and adequate.

### A.   The Proposed Class Is Proper Under Rule 23(a) Because It Satisfies The Numerosity, Commonality, Typicality, And Adequacy Requirements

#### 1.   Numerosity

Under Rule 23(a)(1) of the Federal Rules of Civil Procedure, a class must be "so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1). Courts in this circuit "have generally found that the numerosity requirement is satisfied . . . where a proposed class has at least forty members."  *Ceccone*, 2016 WL 5107202, at *4 (internal quotation marks and citation omitted); *see also Alvarez*, 303 F.R.D. at

160 (gathering cases).  Here, the class that the parties have defined includes 2,488 members, which is well above this minimum threshold.  (*See* Final Appr. Mot. at 3.)

Courts have also recognized that "judicial economy may be considered by courts in evaluating numerosity."  *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 307 (D.D.C. 2007).  Joinder of the nearly 2,500 class members here would be impracticable; therefore, the interests of judicial economy would best be served by allowing these thousands of consumers to receive relief via a single action.  *See, e.g.*, *Ceccone*, 2016 WL 5107202, at *4.  Consequently, the Court easily concludes that the class is sufficiently numerous to Rule 23(a)(1)'s numerosity requirement.

 2. Commonality

Under Rule 23(a)(2), the claims that a class action plaintiff raises must rest on "questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2); *see* *Ceccone*, 2016 WL 5107202, at *5.  Put another way, there must be "at least one issue, the resolution of which will affect all or a significant number of the putative class members[.]"  *Alvarez*, 303 F.R.D. at 160 (quoting *Chilcott*, 522 F. Supp. 2d at 114) (internal quotation marks omitted).  Even if there are "factual variations among the class members[,]" commonality can still exist "so long as a single aspect or feature of the claim is common to all proposed class members."  *Id.* at 160–61 (quoting *Chilcott*, 522 F. Supp. 2d at 114) (internal quotation marks omitted).

In this case, the members of the putative settlement class are all alleged to have been subjected to a singular course of conduct on the part of Lumina Solar—that is, they each allegedly received text messages advertisements from Lumina Solar during a brief period in 2018 (*see* Prelim. Appr. Mot. at 15)—and the legal question raised (i.e., whether Lumina Solar violated the TCPA by sending these messages) is likewise

common across all class members (*see id.*).   Accordingly, the Court finds that the class

satisfies the commonality requirement of Rule 23(a)(2).   *See, e.g.*, *Charvat v. Valente*,

No. 12-cv-05746, 2019 WL 5576932, at *4 (N.D. Ill. Oct. 28, 2019) (finding in the

context of a TCPA class settlement that the commonality requirement was "satisfied by

the shared nature of the injury common to all class members:   receipt of at least one

unwanted automated call or voicemail promoting the products of the . . . Defendants").

      3.   <u>Typicality</u>

     To satisfy the typicality requirement of Rule 23(a)(3), "the claims or defenses of

the representative parties [must be] typical of the claims or defenses of the class[.]"

Fed. R. Civ. P. 23(a)(3).   The purpose of this requirement is "to assess whether the

action can be efficiently maintained as a class [action] and whether the named plaintiffs

have incentives that align with those of the absent class members so as to assure that

the absentees' interests will be fairly represented."   *Kifafi v. Hilton Hotels Ret. Plan*,

189 F.R.D. 174, 177 (D.D.C. 1999) (quoting *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d

48, 57 (3d Cir. 1994)) (internal quotation marks omitted).   Rule 23(a)(3)'s typicality

requirement "is satisfied if each class member's claim arises from the same course of

events that led to the claims of the representative parties and each class member makes

similar legal arguments to prove the defendant's liability."   *Alvarez*, 303 F.R.D. at 161

(quoting *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998)) (internal quotation

marks omitted); *accord In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12,

27 (D.D.C. 2001).

     The typicality and commonality inquiries often overlap, as each seeks to

determine the practicality of proceeding with a class action and the extent to which the

plaintiffs will protect the interests of absent class members."   *Encinas v. J.J. Drywall*

*Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010) (internal quotation marks and citation omitted). However, despite this overlap, "[e]ach proceeds from a different perspective:  the commonality inquiry focuses on what characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." *Alvarez*, 303 F.R.D. at 161 (quoting William B. Rubenstein, *1 Newberg on Class Actions* § 3:31 (5th ed. 2013)) (internal quotation marks omitted).

The claim of the named plaintiff in this case is patently typical of the claims of the members of the putative class; in fact, it is *identical* to the class members' claims in all material respects.  Lumina Solar is alleged to have used an automated system to send the same unsolicited text advertisement to the named plaintiff and to each member of the putative class, in violation of the TCPA.  (*See* Prelim. Appr. Mot. at 15.)  Because the claims of the named plaintiff and those of the class members thus raise the same factual and legal issues, this Court readily finds that the class meets the typicality requirement of Rule 23(a)(3).

4.    Adequacy Of Representation

Finally, under Rule 23(a)(4), this Court must assess whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied where "(1) there is no conflict of interest between the proposed class representative and other members of the class, and (2) the proposed class representative will vigorously prosecute the interests of the class through qualified counsel." *Alvarez*, 303 F.R.D. at 161 (quoting *Encinas*, 265 F.R.D. at 9) (internal quotation marks omitted).

There is no indicia in the record in this matter that there are any conflicts of interest between the named plaintiff and the other members of the class, and this Court

cannot actually fathom how such a conflict might exist.  The named plaintiff is a member of the class, and his claim is, in all material ways, identical to the claims of the other members of the putative class.  Moreover, all members of the class share the common goal of collecting damages for Lumina Solar's alleged violations of the TCPA.

As for Class Counsel, the lawyers who have filed this case make representations concerning their qualifications, including that they "are all qualified, well-respected members of the legal community who have significant experience litigating class action matters of similar, size, scope, and complexity to the instant action."  (Prelim. Appr. Mot. at 16.)  They further state that they "have previously litigated complex, statutory issues in federal court, have performed extensive research and are familiar with the legal and factual issues raised in this litigation, and have the personnel and resources to conduct litigation of this nature[,]" and also that they "have diligently investigated, prosecuted, and devoted substantial time and resources to Plaintiff's and the Settlement Class's claims."  (*Id.* at 16-17.)  Given these qualifications, and in light of Class Counsel's conduct throughout these proceedings, this Court finds that Class Counsel is qualified to prosecute the interests of the proposed class.  Accordingly, the Court finds that Rule 23(a)(4) is satisfied.

**B.    The Proposed Class Is Proper Under Rule 23(b)(3) Because Common Questions Predominate And Class Treatment Is Superior To Individual Actions**

As noted above, the parties seek certification of this class under Rule 23(b)(3), which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

1.   Predominance

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  The predominance inquiry is related to the commonality inquiry in that "[p]laintiffs must show that the common issues identified by the Court . . . as sufficient under Rule 23(a)(2) predominate over any non-common issues." *Chilcott*, 522 F. Supp. 2d at 116.  While "[t]here is no definitive test for determining whether common issues predominate[,]" *Alvarez*, 303 F.R.D. at 162, it is clear that "the common issues need only be predominant, not dispositive of the litigation[,]" *Chilcott*, 522 F. Supp. 2d at 116.  Indeed, "predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member['s] individual position." *Alvarez*, 303 F.R.D. at 162 (internal quotation marks and citation omitted).  Further, "the mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification." *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984).

The instant case arises from allegations that Lumina Solar used an automated system to send all class members uniform text message advertisements in a short window of time, in violation of a single federal statute.  (*See* Compl. ¶¶ 7–10.) Therefore, it is clear beyond cavil that the core factual and legal issues in this case— whether Lumina Solar sent the text message advertisements at issue, and whether the transmission of those messages violated the TCPA, such that the class members are entitled to damages—are common to all of the class members.  (*See* Prelim. Appr. Mot. at 17–18.)  Given this unified course of conduct and singular legal theory, there is no

14

need to examine the claims of each and every class members in order to determine whether or not Lumina is liable for the alleged TCPA violation. *See Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *5 (S.D. Fla. June 15, 2010) (finding the predominance requirement was met where "all of the claims of the named Plaintiff and the Proposed Class are based on the same legal theories and the same uniform advertising"); *see also Alvarez*, 303 F.R.D. at 162 (finding that a class satisfied the predominance requirement where "[the] theory of liability in this case is common to every class member"); *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (finding that "common questions predominate because of the standardized nature of [the defendant's] conduct"). Thus, the Court concludes that the class satisfies Rule 23(b)(3)'s predominance requirement.

### 2.   Superiority

Finally, under Rule 23(b)(3), this Court must assess whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In general, "there are two situations in which a class action is the superior mechanism":  first, where "many individuals have small claims, and otherwise would not be incentivized to pursue them[,]" *Alvarez*, 303 F.R.D. at 162 (citing *Amchem*, 521 U.S. at 617); second, where "the legal system . . . 'is flooded by particular types of claims' brought individually, such that coordination via class action may be efficient[,]" *id.* at 163 (quoting 2 Newberg on Class Actions § 4:64).

This case falls into the former of these two circumstances.  The statutory damages that any individual plaintiff is permitted to recover in the context of a private suit under the TCPA are relatively small (the greater of $500 or actual damages

suffered, with the possibility of treble damages for willful violations, *see* 47 U.S.C. § 227(b)(3)), and thus it is unlikely that any member would pursue an individual action against Lumina Solar for the violation alleged here (although any class member who would have preferred to litigate individually against Lumina Solar had the opportunity to op-out and do so).  Given that individual legal actions are likely to be disincentivized under the TCPA scheme, this Court finds, under Rule 23(b)(3), that a class action is the superior method to adjudicate this TCPA dispute fairly and efficiently.

### C.   The Class Notice Satisfied The Requirements Of Rule 23(c)(2) And The Due Process Clause

This Court further finds that the notice that has been provided to the members of the putative class satisfied both the requirements of Rule 23(c)(2) and the Due Process clause.  To begin with, the notice that was issued clearly and concisely explains each of the seven topics that Rule 23(c)(2) requires.  (*See* Notice of Class Action, Proposed Settlement, Hearing & Claim Form, Ex. 1-B to Prelim. Appr. Mot., ECF No. 16-1, at 20–24.)  In addition, the notice campaign was conducted in a manner that was reasonably calculated to reach all class members.

Specifically, using Lumina Solar's records, the parties were able to compile a list of email addresses associated with the cell phone numbers to which the text messages at issue were sent.  The Settlement Administrator then sent an email containing a copy of the Class Notice, the Claim Form, and an individualized claim identifier to each of these email address.  (*See* Merryman Decl. ¶¶10–12.)  The Settlement Administrator received bounce-back notices for only 619 of these emails  (*see id.* ¶ 12), and with respect to those, the Settlement Administrator used information from Lumina Solar, internet searches, and the U.S. Postal Service's National Change of Address database to

locate a postal address for the owner of the phone number, and mailed these individuals a copy of the Class Notice and Claim Form (*see id.* ¶¶ 14–15).  In addition, approximately two weeks before the claims submission deadline, the Settlement Administrator sent a reminder email to class members who had yet to file claims, reiterating the deadline for filing claims.  (*See id.* ¶ 19.)  And the Settlement Administrator also established a website (www.class-settlement.com) through which class members could view "the Class Notice, Claim Form, and the Settlement Agreement, excluding exhibits," and which also "contained the dates and deadlines to submit Claim Forms and to opt out or object to the settlement, the date of the Final Approval Hearing, and contact information of the Class Administrator and Class Counsel."  (*Id.* ¶ 16.)

The Court finds that this notice campaign was thorough, was the best practicable under the circumstances, *see* Fed. R. Civ. P. 23(c)(2), and was reasonably calculated to reach class members, *see Peters*, 966 F.2d at 1485.

### D.   The Proposed Settlement Is Proper Under Rule 23(e) Because It Is Fair, Reasonable, And Adequate

Having determined that the final certification of the settlement class is appropriate under the standards of Rule 23(a) and (b), and also that the approved and issued notice was substantively sufficient and was calculated to reach class members, this Court turns, finally, to its determination of whether the settlement is "fair, reasonable, and adequate" such that it can be approved under Rule 23(e).  *See* Fed R. Civ. P. 23(e)(2).  As previously explained, to make this determination "courts in this circuit generally consider five factors: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strengths of

plaintiffs' case; (3) the status of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Alvarez*, 303 F.R.D. at 163.  As explained below, each of these factors weighs in favor of approving the instant class action settlement.

### 1.   Arm's-Length Negotiations

Courts generally find that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting *Chilcott*, 522 F. Supp. 2d at 120–21) (internal quotation marks omitted); *accord Stephens v. US Airways Grp., Inc.*, 102 F. Supp. 3d 222, 227 (D.D.C. 2015); *Meijer*, 565 F. Supp. 2d at 55.  In the instant case, the settlement was reached after a period of discovery, and, according to the parties, "only after several months of extensive negotiations among experienced counsel, all of whom have devoted considerable time and effort to this litigation and settlement."  (Final Appr. Mot. at 5.)

The Court has no reason to question the accuracy of these representations, and there is nothing in the record to suggest any collusion or coercion on the part of the parties.  There is also no reason for the Court to doubt that the settlement "was the product of legitimate negotiation on behalf of both sides." *Alvarez*, 303 F.R.D. at 163.

### 2.   Terms Of The Settlement In Relation To The Strength Of The Case

When evaluating the second factor, "the Court compares the terms of the settlement with the likely recovery plaintiffs would attain if the case proceeded to trial, an exercise which necessarily involves evaluating the strengths and weaknesses of plaintiffs' case." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013).  The D.C. Circuit has suggested that this may be the

most important factor in evaluating a proposed class settlement.  *See Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) ("The court's primary task [when considering a settlement under Rule 23(e)] is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case.").

The settlement here provides all class members with a pro-rata share of the $248,800 settlement fund, of no more than $100, upon submission of a valid claim. While this amount is lower than the statutory damages available under the TCPA, it is well-accepted that "[a] proposed settlement may be acceptable even though it amounts to only a percentage of the potential recovery that might be available to Class Members at trial."  *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-00964-GPC, 2014 WL 3519064, at *4 (S.D. Cal. July 14, 2014) (granting preliminary approval to TCPA settlement where class members would receive a $20 check and an $80 voucher for products).  And courts in various jurisdictions have approved TCPA settlements that provide compensation at or below a $100 threshold.  *See, e.g.*, *id.* (citing *Arthur v. Sallie Mae, Inc.*, 2012 WL 4075238 (W.D. Wash. Sept.17, 2012) (payment range of $20-$40); *Gutierrez v. Barclays Grp.*, 3:10cv1012, ECF No. 58 (S.D. Cal. Mar. 12, 2012) ($100 credit or payment); *Adams v. AllianceOne*, 3:08cv0248, ECF No. 137 (S.D. Cal. Sept. 28, 2012) ($40 payment); *Bellows v. NCO Fin. Sys., Inc.*, 3:07cv1413, ECF Nos. 53 & 54 (S.D. Cal. July 13, 2009) ($70 payment)).

Meanwhile, the class members would have faced various challenges in establishing liability absent a settlement.  Lumina Solar has denied liability for any TCPA violations, and it has represented that it "will vigorously oppose the claims asserted in the litigation if the settlement is not approved."  (Prelim. Appr. Mot. at 9.)

Thus, continued litigation would result in both sides incurring considerable costs and expenses, and would likely lead to Lumina Solar declaring bankruptcy, which would pose significant obstacles to class members recovering *any* damages.  (*See* Hr'g Tr., Apr. 30, 2020, at 5:15–6:4 (counsel for Lumina Solar asserting that Lumina Solar is a new company with limited resources that may not survive protracted litigation concerning these allegations).)  *See also Pigford v. Glickman*, 185 F.R.D. 82, 104 (D.D.C. 1999) (considering the fact that "bringing this case to trial likely would have been a very complex, long and costly proposition" in evaluating the class's likely recovery if the case had proceeded to trial), *aff'd*, 206 F.3d 1212 (D.C. Cir. 2000).

In light of these potential difficulties and risks, this Court agrees with the parties that a sum certain is a fair, reasonable, and adequate settlement of the claims raised in this case, even though the $100 settlement payment per class member is below the statutory damages amount.

### 3.   Status Of The Litigation

In assessing the third factor, courts often consider "whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery."  *Alvarez*, 303 F.R.D. at 164 (quoting *Chilcott*, 522 F. Supp. 2d at 117) (internal quotation marks omitted).

In the instant case, as noted above, the parties engaged in discovery prior to agreeing upon the terms of the settlement, and the parties represent that each "possessed the necessary information to evaluate the strengths and weaknesses of their respective cases in order to discuss settlement effectively" and "to make a meaningful decision as to settlement."  (Prelim. Appr. Mot. at 11; *see also* Decl. of Peter Bennett ("Bennett

Decl."), Ex. 2 to Prelim. Appr. Mot., ECF No. 16-2, ¶ 4 (describing discovery that took place).)  Moreover, under the circumstances presented here, the settlement "does not come too early to be suspicious nor too late to be a waste of resources[.]"  *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 856290, at *3 (D.D.C. July 19, 2001).  Therefore, it appears that the relative risks and benefits were fully and fairly assessed.  *See, e.g.*, *Alvarez*, 303 F.R.D. at 164 (crediting counsel's representations that the parties "have engaged in significant informal discovery . . . and that this discovery has been sufficient to give them a reasonably accurate assessment of the case" in assessing whether a proposed class settlement was fair, reasonable, and adequate).

4.   Reaction Of The Class

"The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court[.]"  *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).  Here, the class's "reaction to the settlement in this case appears to have been overwhelmingly positive[,]" *Chilcott*, 522 F. Supp. 2d at 118, as no member has objected or opted out (*see* Merryman Decl. ¶ 21).  And while only 31 class members have submitted claims—which translates to a participation rate of 1.25%—the Settlement Administrator has represented that this rate of participation "is reasonable, and in line is in with other TCPA settlements that Class-Settlement has administered, and for which a similar Notice distribution method was employed."  (*Id.* ¶ 20.)  In addition, the Court credits defense counsel's contention, made during the fairness hearing, that the low participation rate may be driven in large part by the fact that Lumina Solar did not flood recipients with multiple messages, and that some of the recipients purchased solar products from Lumina Solar and were happy with their services.  (*See* Hr'g Tr., Apr. 30, 2020, at 20:11–21:9.)

5.    Opinion Of Counsel

Finally, courts generally agree that "the opinion of experienced counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Alvarez*, 303 F.R.D. at 164 (quoting *Chilcott*, 522 F. Supp. 2d at 121) (internal quotation marks omitted); *see also Ceccone*, 2016 WL 5107202, at \*10; *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-mc-276, 2003 WL 22037741, at \*6 (D.D.C. June 16, 2003).  As noted above, class Counsel represent that they have extensive experience in class action litigation and TCPA litigation.  (*See* Bennett Decl. ¶ 8 (representing that he has "experience handling litigation in State and Federal Courts, specializing in complex, Federal class action litigation focused on the TCPA and consumer protection); *id.* ¶ 9 (Bennett representing that his co-counsel "has extensive experience handling all aspects of direct and appellate litigation in federal court, specializing in complex, federal class action litigation").)  Moreover, counsel for both parties have *jointly* moved for final approval of the settlement, thereby representing, as officers of the Court, that they all believe that the settlement is fair, adequate, and reasonable.  (*See* Final Appr. Mot. at 3, 5–7.)

**E.    The Proposed Attorney's Fee And Service Awards Are Reasonable**

The last issue that remains for the Court's consideration in approving the class action settlement that the parties have reached is the payment to Class Counsel of fees and costs in the amount of $39,808, and the proposed incentive payment to Rogers of $5,000 for his service as the class representative.  As explained below, when the standards that have been established in this Circuit for evaluating such awards are applied, it is clear that these proposed payments are reasonable.

1.    An Attorney's Fee Award Of 16% Of The Common Settlement
Fund Is Reasonable Under The Circumstances Of This Case

Courts have a duty not only to evaluate the overall fairness of a settlement as it relates to the class members, but also "to ensure that claims for attorneys' fees are reasonable." *Chilcott*, 522 F. Supp. 2d at 122; *see* Fed. R. Civ. P. 23(h).  In a "common fund case such as this one, the D.C. Circuit has held that "a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award," *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993).  Indeed, the Circuit has found that this method is preferable because it is less demanding on the reviewing court than the lodestar method, *id.* at 1269, and it "discourage[s] inflation of attorney hours and promot[es] 'efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system[,]'" *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 87 (D.D.C. 2013) (quoting *Trombley*, 826 F. Supp. 2d at 205).[6]  "Fee awards in common-fund cases may range from fifteen to forty-five percent."  *Wells v. Allstate Ins. Co.*, 557 F.Supp.2d 1, 6 (D.D.C. 2008); *accord Chilcott*, 522 F. Supp. 2d at 122; *Lorazepam*, 2003 WL 22037741, at *7.

When reviewing a fee award in a common-fund case, a court must "ensure that claims for attorneys' fees are reasonable, in light of the results obtained." *In re Black Farmers*, 953 F. Supp. 2d at 87 (citing *Trombley*, 826 F. Supp. 2d at 204).  And while the D.C. Circuit "has not yet developed a formal list of factors to be considered in evaluating fee requests under the percentage-of-recovery method," courts in this circuit

---

[6] Unlike the relatively simple task of awarding attorneys a percentage of the settlement fund as their fee, the "lodestar" method of determining reasonable fees requires a court to consider the actual "time and expertise the attorneys invested in the case."  *In re Dep't of Veterans Affairs (VA) Data Theft Litig.*, 653 F. Supp. 2d 58, 61 (D.D.C. 2009).

have often considered seven factors: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." *Id.* at 88; *accord Chilcott*, 522 F. Supp. 2d at 122.

This Court has examined the proposed attorney's fee amount of $39,808 as a percentage of the total value of the instant settlement, considered the seven percentage-of-the-fund factors, and double-checked the result against the lodestar method, and it concludes that the attorney's fees in this case should be approved as reasonable, for at least two reasons.

First, Class Counsel's requested attorney's fees fall well within the range that courts normally approve and are otherwise reasonable. The settlement agreement provides for attorney's fees and costs in an amount that constitute 16% of the Settlement Fund, which is at the bottom end of the typical range. *See Wells*, 557 F. Supp. 2d at 6. With respect to the size of the fund and the number of persons benefitted, the potential class consists of 2,488 individuals, each of whom had the opportunity to seek a payment of up to $100 from the $248,800 Settlement Fund, which represents a significant recovery in TCPA litigation. *See Knutson*, 2014 WL 3519064, at *4 (collecting TCPA cases where settlements were at or below $100 for each class member). Moreover, as explained above, no class members have objected to or opted

out of the proposed settlement, and Class Counsel are experienced consumer class action litigators who have handled a number of TCPA matters.

Regarding the complexity and duration of the litigation, and the related factor of the time counsel has devoted to this matter, the Court notes that this litigation was settled at an early stage, and that the relatively low total fee award reflects this fact. Nevertheless, Class Counsel represent that they spent a significant period of time researching the defendant, engaging in preliminary legal research, and conducting discovery (including third-party discovery), which supports awarding the fees provided for in the Settlement Agreement.  (*See* Hr'g Tr., Apr. 30, 2020, at 8:6–16.)  Finally, Class Counsel represent that the award for fees and costs is "in line with those awarded by courts in analogous class action and TCPA cases."  (Prelim. Appr. Mot. at 12 n.2.)[7]

Second, a cross-check using a "lodestar" calculation also supports approving the fee award.  In some circuits, courts that use the percentage-of-the-fund method to calculate attorney's fees in common fund class actions will cross-check those results by calculating the attorney's fees using the traditional lodestar method, *see In re Black Farmers*, 953 F. Supp. 2d at 101, and while this type of cross-check is not required in this circuit, "district courts are free to employ such a cross-check at their direction to confirm the reasonableness of an award[,]" *id*.  Typically, when conducting this lodestar cross-check, the court is faced with the question of what multiplier of fees and expenses accrued is appropriate to reflect the risk of loss that counsel assumes, and courts

---

[7] While the parties' papers do not address one of the seven traditional factors—the risk of non-payment—and the record does not indicate whether Class Counsel took this matter on a contingent fee basis, the Court finds that this omission does not prevent it from approving the fee award under the circumstances of this case, in the absence of D.C. Circuit precedent requiring a district court to assess each and every factor.  *See In re Black Farmers*, 953 F. Supp. 2d at 87.

25

typically permit awards that are up to four times larger than the accrued fees and costs. *See, e.g.*, *id.* at 102 (citing *In re Lorazepam*, 2003 WL 22037741, at *9).

In the instant case, Class Counsel specifically represent that their billable time and expenses exceed the agreed-to fee award. (*See* Hr'g Tr., Apr. 30, 2020, at 7:24–8:16.) Thus, the lodestar cross-check confirms that the proposed fee award is reasonable and should be approved.

## 2. A $5,000 Service Award To The Named Plaintiff Is Reasonable Under The Circumstances Of This Case

The Settlement Agreement also provides for a $5,000 service award to the named plaintiff. (*See* Settlement Agreement ¶ 16.) Courts in this circuit have recognized that incentive awards such as this are a typical feature of class action litigation. *See In Re Lorazepam*, 2003 WL 22037741, at *10 ("This Court has previously determined that incentive awards to named plaintiffs are not uncommon in class action litigation, particularly where a common fund has been created for the benefit of the entire class."). "In fact, courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ceccone*, 2016 WL 5107202, at *13 (quotation marks and citation omitted).

Here, Class Counsel represent that Rogers invested substantial time at the outset of the litigation because he needed to determine the identity of the company who sent him the message at issue, given that it was not apparent from the message itself. (*See* Hr'g Tr., Apr. 30, 2020, at 9:3–21.) Moreover, under the terms of the parties' agreement and due to the relatively low participation rate, a $5,000 payment to Rogers will not reduce the amount that is paid to any other class member who has submitted a

valid claim.  Thus, the Court finds that a $5,000 service award to the named plaintiff is appropriate.

## IV.     CONCLUSION

For the reasons explained above, this Court finds that the proposed class meets the requirements of both Rule 23(a) and Rule 23(b)(3); that the notice provided to the class members comports with Rule 23(c)(2) and the Due Process Clause; and that the proposed settlement is fair, reasonable, and adequate.  Accordingly, as stated in the accompanying Final Approval Order, the parties' Joint Motion for Final Approval is hereby **GRANTED** and the instant legal action is **DISMISSED**.

DATE:  June 19, 2020                *Ketanji Brown Jackson*
                                    KETANJI BROWN JACKSON
                                    United States District Judge

27